FILED

2008 Oct-09  PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| BARBARA CAMPBELL, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case. No.: 4:07-CV-1231-JHH |
| | } | |
| MICHAEL J. ASTRUE, | } | |
| Commissioner of Social Security, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Plaintiff, Barbara Campbell, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

### I.      Proceedings Below

Plaintiff filed her application for a period of disability and DIB on November 13, 2003, alleging a disability onset date of September 30, 2002. (R. 25, 69-71). Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2007. (R. 26).

On January 29, 2004, Plaintiff's application was denied. (R. 25, 51-55). On March 24, 2004, Plaintiff requested an administrative hearing (R. 59), which was held before an Administrative Law Judge ("ALJ") on January 18, 2006. (R. 359-407). Both Plaintiff and Vocational Expert Dr. Susan Heape testified at the hearing. (R. 365-407).

In the twenty-two page October 25, 2006 decision, the ALJ determined that Plaintiff was not eligible for DIB because she was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 46). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council and submitted additional evidence that was incorporated into the record on review. (R. 7-21).[1] After the Appeals Council denied Plaintiff's request for review on April 27, 2007, (R. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of Plaintiff's alleged onset of disability, she was fifty-six years old and had an associates degree in accounting computer work. (R. 365, 386). Plaintiff's past relevant positions in the clerical field as an accounting clerk and a personnel supervisor (which required her to perform payroll and work with computers, personnel, and insurance) are light, skilled positions. (R. 368, 382-84, 394-95). According to Plaintiff, she has been unable to engage in substantial gainful activity since September 20, 2002, when she became unable to work due to: (1) lumbar pain and restrictions due to degenerative disc disease with disc herniations and bulging, radiating bilateral leg pain and numbness, and neurogenic claudication; (2) other lower extremity impairments and musculoskeletal impairments including muscle weakness, numbness, and spasms in the legs, left foot, left heel, neck, left shoulder, left arm, left hand, and left leg; (3) vertigo with dizziness, skewed vision, tremor, and tinnitus; (4) transient ischemic attacks versus complex migraine impairment; (5) sleep disturbance; (6) anxiety; and (7) cognitive dysfunction and impaired judgment due to disabling pain and the effects of strong medications. (Doc. # 11, at 7-8).

---

[1] Notably, Plaintiff's attorney submitted to the Appeals Council a twelve-page letter asserting that the ALJ's decision should be reversed for reasons virtually identical to those asserted on appeal to this court. (R. 9-21). Those arguments were rejected by the Appeals Council. (R. 4-6).

Plaintiff's "Disability Report," which was filed in connection with her disability application, alleged disability due to a back injury and degenerative disc disease. (R. 130). At the January 18, 2006 hearing, Plaintiff described that she experiences continuous pain in her lower back and lower extremities, along with side effects from pain medication, including impaired concentration and drowsiness. (R. 368-70, 390).

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working ("Step One"). Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities ("Step Two"). Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations ("Step Three"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work ("Step Four"). The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work ("Step Five"). In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

3

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2007, (R. 45, No. 1), and that she did not engage in substantial gainful activity during the period of time from her alleged onset of disability on September 30, 2002, through her date last insured, (R. 45, No. 2). Although the ALJ found that, during the relevant time period, Plaintiff did have the medically determinable impairment of degenerative disc disease, which he characterized as "severe," he nevertheless determined that Plaintiff did not have an impairment or combination of impairments that met or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 45, No. 3). According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 45, Nos. 4-5).

Based upon his review of the record, the ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform light work with a sit/stand option allowing her to change positions as needed and with only occasional bending, stooping, squatting, and climbing, but no pushing or pulling with her lower extremities, no working around unprotected heights, and no driving or operating heavy or hazardous machinery. (R. 45-46, No. 6). With the help of testimony from a VE, the ALJ found that Plaintiff could return to her past relevant work as both an accounting

4

clerk and a personnel clerk, neither of which required the performance of work-related activities precluded by her RFC. (R. 46, No. 7). Thus, the ALJ found that Plaintiff was not under a "disability" at any time during the relevant period. (R. 46, No. 8).

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Docs. # 11, 12, 13, 15). Plaintiff challenges the ALJ's decision at every step of the five-step sequential analysis, with the exception of the ALJ's finding under Step One that Plaintiff was not working at the time of his decision. (Doc. # 11). Specifically, Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ erred at Step Two when he failed to find all of her impairments to be "severe;" (2) the ALJ erred at Step Three when he offered only summary conclusions of his findings regarding the listings; and (3) the ALJ erred at Step Four of his analysis when calculating RFC and considering whether Plaintiff could return to her past relevant work.[2]

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§

---

[2] This case ended at Step Four of the sequential evaluation process with the ALJ's finding that Plaintiff could perform her past relevant work. (R. 45). Thus, notwithstanding Plaintiff's argument that the ALJ erred at Step Five (Doc. # 12, at 3), the ALJ properly stated that it was "unnecessary to consider the remaining step in the sequential evaluation process," (R. 45).

405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal. The court will address in turn each of Plaintiff's challenges to the sequential analysis.[3]

---

[3] Although Plaintiff's brief also complains that the ALJ mentioned, but failed to give deference to, a worker's compensation ruling by the Circuit Court of Etowah County that she was unable to work, that argument merits little discussion. The Eleventh Circuit has made clear that "findings of disability by another agency [are] not binding on the Secretary." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). Indeed, as the ALJ noted, "the standard for establishing disability for Worker's Compensation is very different than that proscribed by the Social Security Administration." (R. 43).

## A.   Step Two Analysis of the Severity of Plaintiff's Impairments

Plaintiff's first challenge concerns the ALJ's finding at Step Two of the sequential analysis. In order to meet her burden at this point in the ALJ's consideration of her disability claim, Plaintiff must provide evidence of a "severe" impairment which constitutes more than a "slight abnormality" and has more than a minimal impact on her ability to perform basic work activities.  *McDaniel v. Bowen*, 800 F.2d 1026, 1028 (11ᵗʰ Cir. 1986).  If she is found to have satisfied that burden, the ALJ can continue his evaluation of her disability claim by proceeding with the other steps in sequence. If she does not demonstrate that at least one impairment meets the definition of "severe," further consideration of her claim is pretermitted and her disability claim is due to be denied.

In this case, Plaintiff's challenge to the ALJ's finding at Step Two belies his affirmative finding that she did, in fact, meet her burden to demonstrate that her impairment of degenerative disc disease is "severe." (R. 45, No. 3).  Despite that ruling in her favor, Plaintiff argues that the ALJ's finding was in error because he failed to find that *all* of her alleged impairments meet the threshold of severity. (Doc. # 11, at 13-14).   In a 2004 unpublished opinion, a panel of the Eleventh Circuit rejected that very same argument by opining that it is simply not possible for an ALJ to err at Step Two of his analysis when he finds in favor of the plaintiff:

> At step two of the sequential evaluation, the ALJ reviewed the medical evidence regarding both her physical and mental impairments and concluded that [plaintiff] "had an impairment or combination of impairments considered 'severe.'" Therefore, the ALJ *could not have committed any error at step two* because he found that [plaintiff] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two.

*Council v. Commissioner of Social Security*, No. 04-13128, at 4 (11ᵗʰ Cir. December 28, 2004) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)) (emphasis added) (Doc. # 14-2).

But even setting aside the matter of whether the ALJ *could have* erred by finding only one of Plaintiff's alleged impairments to be severe, the true nature of Plaintiff's argument is not a dispute with the ALJ's finding at Step Two.  Even Plaintiff admits in her brief that what she really challenges is the effect of that finding on the ALJ's later analysis: "[t]he ALJ's errors at Step 2 in not finding all of the Plaintiff's severe impairments to indeed be severe resulted in flawed and erroneous findings at subsequent steps."  (Doc. # 15, at 3).

Plaintiff's argument would more appropriately be characterized as either a Step Three or a Step Four challenge to the ALJ's listings assessment or RFC finding, respectively.  As Plaintiff concedes, Step Two determinations are only "'employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint.'" (Doc. # 11, at 14) (citing *Gaffney v. Commissioner*, 277 F.Supp.2d 733, 736 (E.D. Mich. 2003).  Whether or not the ALJ finds one or ten impairments to be "severe" at Step Two is of no moment, as both the third and fourth steps of the sequential analysis require the ALJ to consider all impairments - regardless of whether they meet the second-step definition of "severe."  Indeed, when considering whether a plaintiff's conditions meet or equal one of the listings under Step Three, the ALJ must consider all alleged impairments, alone and in combination.  *See Davis v. Shalala*, 985 F.2d 528, 529 (11th Cir. 1993).[4] Likewise, when assessing RFC,

> the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do

---

[4] In this case, however, Plaintiff's Step Two argument cannot be recharacterized as a Step Three challenge.  The only specific argument Plaintiff makes at Step Three is that her back condition (*i.e.*, degenerative disc disease) satisfies Listing 1.04 "Disorders of the Spine."  Because the ALJ found her back condition to be severe, whether or not he found any of her other non-back related impairments to be severe has no impact on her Step Three listings argument to this court.

basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Social Security Ruling 96-8P: "TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS," 61 Fed. Reg. 34474-34478, 1996 WL 374184, at *5. Thus, whether an ALJ determines that one or all impairments meet the definition of "severe" has no impact on his ultimate analysis; so long as the ALJ finds just *one* impairment to be severe at Step Two, all of a plaintiff's impairments will be considered in the ALJ's later analysis of the remaining steps.

For both of these reasons, and consistent with the caselaw and regulations interpreting the sequential analysis, the court finds that the ALJ could not - and did not - err at Step Two of his analysis when he found one of Plaintiff's alleged impairments to be severe.

**B.      Step Three Analysis of the Listings**

As outlined earlier, Step Three of the sequential evaluation process *directs* a finding of disability if Plaintiff's impairments meet or equal a listed impairment. *See* 20 C.F.R. § 404.1520(d). In other words, the listings set forth conditions that are so severe that, if a listing is met or equaled, a plaintiff is considered disabled without regard to vocational considerations. If a plaintiff contends that she *meets* a listing, that burden requires that she "present *specific medical findings* that meet the various tests listed under the description of the applicable impairment." *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986)(emphasis added). In the alternative, if a plaintiff "contends that [s]he has an impairment which is *equal* to one of the listed impairments, [she] must present medical evidence which describes how the impairment has such an equivalency." *Bell*, 796 F.2d at 1353

(emphasis added).[5]  In all cases, the plaintiff bears the burden to prove with *medical evidence* that, prior to the expiration of her insured status, she satisfied or equaled the requirements of a listing. *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987).

Plaintiff's main critique of the ALJ's finding regarding her failure to satisfy any of the listings is the conclusory nature of his ruling: "[t]he claimant has no impairment which meets the criteria of any of the listed impairments. . . . [and] [n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (R. 37).  Citing non-binding cases from other jurisdictions, Plaintiff suggests that the brevity of the ALJ's ruling *alone* is sufficient to warrant reversal regardless of whether that ruling is supported by substantial evidence. (Doc. # 12, at 1-2).  The court disagrees.

Although it is certainly true that "[t]here must be sufficient recorded evidence of the *ratio decidendi* so that [a reviewing court] can determine on the merits whether a claim is 'rational and supported by substantial evidence,'" *Powell on Behalf of Powell v. Heckler*, 773 F.2d 1572, 1576 (11th Cir. 1985)(quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)), an ALJ is not required to cite to particular regulations, cases, phrases, or formulations when outlining his findings and the rationale therefore, *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987).  Plaintiff is correct that the ALJ's decision does not exhaustively review all of the potentially applicable listings,

---

[5] Medical equivalence will be found when "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a). Medical equivalence is based upon medical evidence only, and "[a]ny medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). The Supreme Court has held that: [f]or a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

much less explain how Plaintiff fails to meet or equal those listings.  But that is not the standard. The burden is on *Plaintiff* to present medical evidence implicating the listings, and she has failed to do so here.

Indeed, the only potentially applicable listing identified by Plaintiff is Listing 1.04, requiring a disorder of the spine with evidence of: (1) nerve root compression leading to pain, limitation of motion, motor loss and a positive sitting and standing straight leg raise test result if the lower spine is involved; (2) spinal arachnoiditis; or (3) lumbar spinal stenosis resulting in psuedocalcification. A careful review of the medical evidence of record reveals no support for a finding that the above listing requirements are met or equaled, and - most importantly - Plaintiff has failed to point to any evidence that would suggest a finding to the contrary.  Ironically, after Plaintiff devotes a significant portion of her brief to criticism of the ALJ's conclusory finding that she fails to satisfy any of the listings, she then claims in conclusory fashion that she meets Listing 1.04 without citation to any evidence to support that assertion.  (Doc. # 12, at 2) ("However, the Plaintiff would point out here that the medical evidence of record would certainly support a finding that Listing 1.04 is met in this claim, or at the very least, would support a finding of medical equivalence as to that Listing."). Plaintiff has failed to meet her burden of showing that Listing 1.04 - or any other listing for that matter - is satisfied in this case, and the court's independent review of the medical record reveals no support for her assertion either.

Thus, the court rejects Plaintiff's contention that the ALJ's perfunctory statement regarding Plaintiff's failure to satisfy a listing is enough to warrant remand in this case.  It is patently obvious that the record lacks either "specific medical findings" meeting a listing or, at the least, medical

11

evidence demonstrating equivalency to a listing. *Bell*, 796 F.2d at 1353.[6]  Even without a step-by-step analysis by the ALJ of all of the potentially applicable listings, this court will not disturb his conclusion because it is supported by substantial evidence.

## C.    Step Four Analysis of RFC and Past Relevant Work

Plaintiff next challenges the ALJ's RFC assessment and conclusion that she could return to her past relevant work. (Doc. # 12, at 3-10; Doc. # 13, at 1-4). The crux of her complaint is that the ALJ accorded less than controlling weight to the functional capacity opinions of treating doctors Thomas Martin (who has seen Plaintiff since July 2002 for low back, leg, and foot pain, vertigo, dizziness, blurred vision, tremors, tinnitus, weakness, and headaches) and S. Aggarwal (a rehabilitation specialist who has treated Plaintiff since December 2003 for lumbar pain, sleep disturbance, and anxiety) while giving controlling weight to the assessment of consultative examiner Dr. Henry Born (who examined Plaintiff at the request of the Commissioner on June 9, 2005). (R. 331-33). According to Plaintiff, had the ALJ given the appropriate weight to her treating physicians' opinions, which "relegate her to a range of activities well below the sedentary level of exertion," he

---

[6] If the ALJ's conclusory statement that Plaintiff failed to meet the listings was not, in fact, supported by substantial evidence, or if the record evidence suggested that it was a close call as to whether a particular listing was met, this would be a very different case. *Compare Neal M. Hughes v. Commissioner of Social Security*, 3:07-cv-00613-JHH, Doc. # 15 (September 23, 2008), at 7-11 ("The only portion of the ALJ's opinion addressing whether Plaintiff satisfies the requirements of Listing 14.08 summarily states that the '[m]edical record indicates that laboratory test results and other medical records indicate that the claimant's impairment does not meet the requirement of Listing 14.08 regarding human immunodeficiency virus (HIV).' . . . To the contrary, the medical evidence certainly intimates Listing 14.08, if not satisfies it. . . . Accordingly, given the lack of clarity in the ALJ's decision, and considering the amount of record evidence related to Listing 14.08 that must be analyzed in the context of that Listing's requirements, the court is left with no choice but to remand this case with instructions to evaluate whether Plaintiff satisfies the requirements of Listing 14.08, including procuring additional medical expert testimony, if necessary, to determine whether this Listing is met or equaled.").   But this is not a close call.

would have concluded that her "occupational base has been so drastically eroded that she cannot perform any substantial, gainful activity at any exertional level." (Doc. # 12, at 5).[7]

The regulations provide that the weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific

---

[7] Plaintiff's brief organizes her argument into four enumerated parts: (1) the ALJ failed to accord the proper weight to her treating physicians in assessing RFC; (2) the ALJ's credibility findings lack support or reasoning; (3) the ALJ's RFC assessment fails to reference the supporting evidence; and (4) the ALJ's finding regarding Plaintiff's past relevant work employed improper legal standards and is not supported by substantial evidence. (Doc. # 12, at 3-10; Doc. # 13, at 1-4). The court has organized Plaintiff's arguments in a slightly different format to aid its analysis.
The court has not, however, devoted significant time to Plaintiff's second contention regarding credibility findings because she has made no substantive challenge to the ALJ's decision to discredit her subjective complaints. Instead, she relies on a standard regurgitation of the relevant caselaw without any application to her case. (Doc. # 12, at 9-10). In any event, the court finds that the ALJ's decision to discredit Plaintiff's subjective complaints was well-documented and thoroughly supported by the medical evidence of record. (R. 37-43).
As for the other three enumerated sub-parts of Plaintiff's argument, they all boil down to her contention that the ALJ improperly weighted the medical evidence which led to his erroneous RFC assessment and conclusion that she could return to her past relevant work.

contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physician's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

In addition to the above parameters for weighting the opinions of physicians, the regulations make clear that the sole responsibility for determining Plaintiff's residual functional capacity falls on the ALJ. 20 C.F.R. §§ 404.1527(e)(2); 404.1545(a) (2007). Although an ALJ should review all of the medical evidence, and can consider opinions from acceptable medical sources when calculating RFC, "the final responsibility for deciding [those] issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).

Here, the ALJ determined that Plaintiff could perform a limited range of light work,[8] with a sit/stand opinion and no more than occasional bending, stooping, squatting and climbing; no pushing or pulling with the lower extremities; no working around unprotected heights; and no driving or operating heavy or hazardous machinery. (R. 45-46, No. 6). In making that finding, the ALJ's decision indicates that he considered all of the evidence of record and detailed the reasoning for his weighting of that evidence. The ALJ specifically set forth his analysis of the following evidence that is particularly relevant to the matter of Plaintiff's residual functional capacity and work limitations: (1) three opinions expressed by treating physicians as to the matter of Plaintiff's

---

[8] The regulations set forth the parameters of work at the "light" exertional level, which must involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. 20 C.F.R. § 404.1567(b) (2007). Moreover, for an individual to be able to perform the full range of light work, she must be able to walk and stand for a period of time or sit most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) (2007).

impairments and limitations, (2) the assessment of a consultative examiner regarding Plaintiff's work capability, and (3) a functional capacities evaluation completed by a physical therapist at the request of Plaintiff's attorney. (R. 39-42). Then, based upon his assessment of Plaintiff's RFC, the ALJ engaged in a hypothetical colloquy with the VE that led him to conclude that Plaintiff could return to some of her past relevant work. Those key points of the ALJ's analysis are examined below.

### 1.     Three Opinions of Treating Physicians

First, the ALJ considered the opinions of Plaintiff's treating physicians Drs. Martin and Aggarwal, upon whom Plaintiff principally relies in support of her disability claim. (Doc. # 12, at 1-10). In March 2004, Dr. Martin opined that Plaintiff was unable to work due to significant limitations including the inability to lift over five pounds, the need for frequent changes in position when sitting and frequent rest periods when walking, and disabling pain. (R. 216-217). Dr. Martin concluded that Plaintiff is "unable to be gainfully employed due to her back condition" and probably will retain that inability "until the end of her natural life." (R. 217). As noted earlier, the ALJ was not required to give, and indeed did not give, any weight to Dr. Martin's ultimate conclusion that Plaintiff could not work (R. 40), because "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996). In any event, Dr. Martin's opinion that Plaintiff would never in her lifetime be able to work again simply was not consistent with Plaintiff's own actions – approximately one year after Dr. Martin expressed his opinion, Plaintiff applied for several clerical jobs, which indicated that "she felt capable of work activity." (R. 39, 381-82).[9]

---

[9] Although Plaintiff did not provide the exact dates of her applications and interviews, she indicated at the January 18, 2006 hearing that her applications were submitted "over a year ago." (R. 381-82). Thus, the court presumes that Plaintiff's applications were submitted sometime in the year

Moreover, the ALJ appropriately gave less than controlling weight to the specific limitations prescribed by Dr. Martin as they were not supported by any objective evidence such as examinations, tests, or other treatment records. As the ALJ found:

> [Dr. Martin's] treatment notes are extremely sparse with no indication that any type of physical examination was ever performed or that any medication side effects were ever reported . . . . Therefore, there is simply no evidence that Dr. Martin's opinion is based on anything other than the claimant's subjective complaints.

(R. 41, 217-33). The law is clear that subjective complaints of pain do not *alone* establish an impairment – medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptomatic pain alleged. *Holt*, 921 F.2d at 1223. Thus, it was appropriate for the ALJ to accord less than controlling weight to the restrictions noted by Dr. Martin, despite his status as a treating physician, because his opinions were based solely on subjective presentation rather than objective findings. *See Crawford v. Barnhart*, 363 F.3d 1155, 1159 (11th Cir. 2004) (reasoning that ALJ properly rejected the opinion of a treating physician "based primarily on Crawford's subjective complaints of pain").

Likewise, the ALJ applied proper legal standards when weighting treating physician Dr. Aggarwal's April 8, 2004 opinion that Plaintiff could only lift ten pounds, stand or sit for 30 minutes at a time, and suffered from distracting pain and medication side effects. (R. 234). As the ALJ noted when he decided to accord less than substantial weight to the above restrictions, Dr. Aggarwal later backtracked on his previous restrictions when he was questioned regarding his April 2004 opinion while under oath at his deposition. (R. 84-85). At that later date, Dr. Aggarwal admitted that his previously prescribed limitations were flexible and that, in any event, his restrictions were based

---

after Dr. Martin's March 2004 prediction that she would never work again.

solely on Plaintiff's subjective complaints (just as Dr. Martin's opinions, *supra*). (R. 41, 84-85). Morever, although Dr. Aggarwal's report opined that Plaintiff "may" experience some sedation from her pain medications, his "treatment notes reflect no complaints of medication side effects" by Plaintiff, as the ALJ noted. (R. 42, 234). Thus, the ALJ properly declined to give significant or controlling weight to Dr. Aggarwal's opinions. (R. 42).[10]

Interestingly, although Plaintiff vehemently challenges the ALJ's decision to give less than controlling weight to the two treating opinions outlined above, the ALJ actually gave less than controlling weight to the opinion of a third treating doctor, Dr. Zenko Hrynkiw, whom Plaintiff does not mention. (R. 39-42). Of course it is not surprising that Plaintiff does not quarrel with the ALJ's weighting of Dr. Hrynkiw's opinion – that doctor, who began treating Plaintiff in September 2002, opined that Plaintiff could work with no restrictions, in direct contradiction to her disability claim. (R. 174). Specifically, in March 2003, Dr. Hrynkiw determined that Plaintiff was at maximum medical improvement when he released her to work with a partial impairment rating of 0% and no

---

[10] As a final matter on the weighting of Drs. Martin and Aggarwal's opinions, the court notes that it is not persuaded by Plaintiff's suggestion that rejection of a treating physician's opinion requires that the ALJ recontact that physician to "clarify" the opinion. (Doc. # 12, at 8). Although recontacting a treating physician may be the proper action to take if the ALJ needs clarification as to that physician's opinion, *see* SSR 96-5p, 61 Fed. Reg. 34471, 34472 ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."), that is not what occurred here. In this case, the ALJ needed no clarification nor explanation of the opinions of Doctors Aggarwal and Martin– the ALJ had before him a well-developed medical record and his opinion does not state nor imply that the record was inadequate for him to make a disability determination. (R. 25-46). *See* SSR 96-2p, 61 Fed. Reg. 34490, 34491 (1996) ("Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed."). Thus, under the circumstances in this case, it was not improper for the ALJ to conclude, without recontacting the sources, that the opinions of Doctors Aggarwal and Martin were due less than controlling weight.

specific limitations. (R. 39, 174). Notably, although Dr. Hrynkiw's treating opinion is technically consistent with the ALJ's ultimate conclusion that Plaintiff is capable of some work and not disabled under the Act, the ALJ nevertheless accorded that opinion less than controlling weight because the record failed to support Dr. Hrynkiw's decision to release Plaintiff to a full range of work without any limitations whatsoever. (R. 39). The ALJ's thoughtful and careful analysis of the treating evidence of record is apparent from his thorough recitation of the reasons for his weighting decisions.

### 2.      Consultative Examiner Assessment

In addition to evaluating the treating opinions when assessing Plaintiff's RFC, the ALJ also considered the June 2005 examination by consultative examiner Dr. Henry Born. Dr. Born concluded that although Plaintiff experienced chronic reoccurring back pain, she could nevertheless tolerate a normal workday that included standing for four hours, walking for two hours, sitting for four hours, lifting 30 pounds occasionally and 20 pounds frequently, and performing postural movements such as stooping. (R. 334-36). Although Plaintiff takes issue with the ALJ's finding that Dr. Born's non-treating opinion should be accorded "significant weight under 20 C.F.R. § 404.1527," the ALJ's decision is consistent with proper legal standards because it is consistent with other medical evidence of record. As the ALJ pointed out, Dr. Born's "opinion is very similar to the objective findings on the claimant's January 2005, functional capacities evaluation form [which] also indicates that she is capable of performing at least light work if allowed to change positions as needed and limit her postural movements."  (R. 43).

18

### 3.     Functional Capacities Evaluation

Indeed, that January 2005 functional capacities evaluation, which was conducted by physical therapist Mitchell C. Hamric at the request of Plaintiff's attorney, provides additional support for the ALJ's RFC assessment.  (R. 255).  That evaluation revealed that, in a normal workday, Plaintiff could tolerate sitting for four hours in segments of 45 minutes at a time, standing for five hours in segments of one hour at a time, and walking for five hours with occasional long distances.  (R. 256-57).  Moreover, Plaintiff demonstrated the capacity to occasionally perform various postural movements such as bending, occasionally carry up to 32 pounds with the right arm and 27 pounds with the left arm, and frequently carry 16 pounds with the right arm and 13 pounds with the left arm.  (R. 256-257).  As the ALJ noted: "this particular functional capacities evaluation result accurately and objectively reflects the claimant's capabilities such that she should be able to perform at least light work which allows for changing of position and limits postural movements."  (R. 42).

Having carefully considered the evidence before the ALJ, and for all of these reasons, the court finds that proper legal standards bolster the ALJ's decision to accord substantial weight to a consultative physician's opinion while opting not to give the same weight to three of Plaintiff's treating physicians.  Indeed, such a decision was commensurate with both the applicable legal standards and the other evidence of record regarding Plaintiff's alleged impairments.[11]  That

---

[11] The court also rejects Plaintiff's suggestion that the ALJ failed to "develop a full and fair record" regarding Plaintiff's impairments.  (Doc. # 12, at 3-4).  The law is clear that while the ALJ has the duty to "investigate the facts and develop the arguments both for and against granting benefits *Sims v. Apfel*, 530 U.S. 103, 111 (2000),the *claimant* has the responsibility to produce evidence in support of her disability claim, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Evidence regarding the specific limitations and restrictions Plaintiff experiences in her ability to work is evidence Plaintiff is responsible for producing. *See Ellison*, 355 F.3d at 1276. Accordingly, it is Plaintiff, and not the ALJ, who carries the burden to provide a medical record that is complete. *See* 20 C.F.R. §§ 416.913(e), 416.916.

evidence provides substantial support for the ALJ's RFC assessment,[12] which served as the foundation for his conclusion that Plaintiff could perform her past relevant work.

### 4.    Past Relevant Work Analysis

Although Plaintiff also challenges the ALJ's finding that she could return to her past relevant work as an accounting clerk and a personnel clerk, her argument consists only of a bald assertion that the "ALJ made conclusory comments and findings, and he specifically did not fulfill his duty to engage in specific analysis or fully question the Plaintiff and develop the record regarding the physical and mental demands of her past relevant work." (Doc. # 13, at 3).  To the contrary, the court finds that the ALJ's analysis comports with the relevant caselaw and regulatory requirements.

The law makes clear that it is Plaintiff who bears the burden to prove that she is unable, due to physical or mental impairments, to perform her previous work. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). If the ALJ finds that Plaintiff can perform some or all of her past relevant work, she will not be found disabled. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986); 20 C.F.R. § 404.1520(f) (2007).

At the January 2006 administrative hearing, the ALJ appropriately elicited the testimony of VE Susan Heape, who opined that Plaintiff's past relevant jobs as an accounting clerk and a personnel supervisor were skilled positions in the light exertional category. (R 394-406).  Using his RFC assessment, the ALJ posed a hypothetical question to the VE questioning whether a person of Plaintiff's vocational profile could perform either of those prior jobs if she suffered mild/moderate

---

[12] Plaintiff's reliance on Social Security Ruling 96-8P: "TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS," 61 Fed. Reg. 34474-34478, 1996 WL 374184, for her argument that the ALJ should have set forth a function-by-function analysis when assessing RFC, (Doc. # 13, at 1-2) is inapposite.  That ruling applies only to the Commissioner's *initial* evaluation of the disability claim, not to the ALJ's decision.

pain, required a sit/stand option at will, and was limited to occasional bending, stooping, squatting and climbing; no pushing or pulling with the lower extremities; no working at unprotected heights; no operation of hazardous or heavy machinery; and no driving. (R. 396-97, 401). In response, the VE testified that such an individual could perform both of Plaintiff's past positions as described. (R. 147-150, 367, 401).

It certainly was appropriate for the ALJ to seek assistance from a VE in determining whether Plaintiff could return to her past relevant work. *See* 20 C.F.R. § 404.1560(b)(2)(2007) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a  claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of h[er] past work."); *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988). Moreover, the ALJ's questioning of the VE was taken almost verbatim from his RFC assessment, which the court has already found to be based upon substantial evidence. Plaintiff has offered no evidence or argument to suggest that her prior jobs should have been classified as anything but skilled, light exertional positions, and the record contains no evidence to suggest that the VE's assessment of those positions as such was inaccurate. Because the court finds no error in the ALJ's questioning or the VE's analysis of Plaintiff's prior positions, the court affirms the ALJ's conclusion that Plaintiff could return to her past relevant work.

**VI.    Conclusion**

Thus, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this

determination.  The Commissioner's final decision is due to be affirmed, and a separate order in

accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____ 9th _____ day of _____ October _____, 2008.

_____
**JAMES H. HANCOCK**
UNITED STATES DISTRICT JUDGE